Lee Phillips (009540)
**LAW OFFICE OF
LEE PHILLIPS, P.C.**
209 N. Elden Street
Flagstaff, Arizona 86001
(928) 779-1560
(928) 779-2909 Facsimile
Email: leephillips@leephillipslaw.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Neko Wilson, as an individual, | Case No. |
| Plaintiff-Petitioner, | |
| v. | **PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| Sheriff David Clouse, in his official capacity, and Navajo County, a municipal entity, | **IMMEDIATE RELIEF SOUGHT** |
| Defendants. | |

# TABLE OF CONTENTS

INTRODUCTION…………………………………………………………...  1

JURISDICTION AND VENUE……………………………………………  4

PARTIES…………………………………………………………………  5

FACTUAL ALLEGATIONS………………………………………………  6

    I.    COVID-19 Poses an Ever Increasingly Significant Risk of
Serious Illness, Injury, and Death to Plaintiff Neko Wilson
And Other Medically Vulnerable and Disabled Inmates………….  6

    II.    The Navajo County Jail is Experiencing a Sudden Increase
of COVID-19 Cases Because of Defendants' Failure to
Take Reasonable Steps to Protect Neko Wilson and Others
In Jail……………………………………………………………  14

        -Hazardous Intake Processes and Conditions……………………..  19

        -Insufficient Social Distancing in General Population……………  23

        -Lack of Personal Protective Equipment (PPE) and Cleaning……  24

        -Lack of Appropriate Safeguards Employed After Suspected
And Known Infected Persons and Identified General
Inadequacy of Testing……………………………………………  27

        -Lack of Protection for Medically Vulnerable and Disabled………  33

        -Lack of Information and Education………………………………  34

        -Lack of Testing or Screening of Staff……………………………  35

CLAIMS FOR RELIEF…………………………………………………...  36

    First Claim for Relief: Violation of 14th Amendment Conditions of
Confinement…………………………………………………………..  36

    Second Claim for Relief: Violation of 14th Amendment Unconstitutional
Punishment…………………………………………………………  37

    Third Claim for Relief: Habeas Corpus/Unlawful Detention……………  38

    Fourth Claim for Relief: Due Process for Pre-Trial Detainees…………  40

    Fifth Claim for Relief: Americans with Disabilities Act…………………  41

    Sixth Claim for Relief: Rehabilitation Act Violation……………………..  44

REQUEST FOR RELIEF…………………………………………………  45

**INTRODUCTION**

1.  The COVID-19 pandemic has taken hold at Navajo County's jail, and the virus is spreading rapidly. The number of positive COVID-19 cases has skyrocketed in Navajo County to 3,625 as of June 30, 2020[1]. Although testing of inmates in the Navajo County jail is virtually non-existent. Of the seven inmates tested as of June 25, 2020, five have tested positive.[2] An additional 50 inmates have been placed in different levels of isolation.[3] In addition, 9 of the jail staff have tested positive.[4]

2.  While Navajo County and Navajo County Sheriff David Clouse claim to be implementing measures sufficient to contain the virus at the facilities—the exploding number of infections tells a different story. In fact, Defendants have not instituted even the most basic safeguards for incarcerated persons and staff. Known dangerous and deadly conditions across the jails include:

---

[1] *See Data Dashboard: Summary*, ARIZONA DEPT. OF HEALTH SERVICES (accessed June 28, 2020), https://cutt.ly/muxkCB4; *Data Dashboard: Confirmed COVID-19 Cases by Day*, ARIZONA DEPARTMENT OF HEALTH SERVICES (accessed June 30, 2020), https://www.azdhs.gov/preparedness/epidemiology-disease-control/infectious-disease-epidemiology/covid-19/dashboards/index.php; *State Health Facts: COVID-19 Te* , KAISER FAMILY FOUNDATION (accessed June 15, 2020), https://cutt.ly/zuxzHn7.

[2] Holmes, Courtney, *Dozens of Navajo County Inmates in Isolation after Potential Coronavirus Exposure,* ABC15 Arizona, https://www.abc15.com/news/local-news/investigations/dozens-of-navajo-county-inmates-in-isolation-after-potential-coronavirus-exposure; Krejci, Cleo, *COVID-19 and Inmate Treatment Highlighted in Neko Wilson Case at Navajo County Jail,* AZ Central, https://amp.azcentral.com/amp/3224732001.

[3] *Id.*

[4] *Id.*

a. inadequate COVID-19 testing or screening of newly booked detainees, and failure to properly implement routine intake cohorting;

b. inadequate COVID-19 testing or screening of incarcerated persons with symptoms or those exposed to someone known or suspected to be infected with COVID-19 and failure to implement proper cohorting and quarantine;

c. inadequate protections for Neko Wilson and other medically vulnerable and disabled incarcerated persons;

d. failure to institute appropriate social distancing practices in the jail, including at booking, in the pods' bunk arrangements, recreational areas, dining areas, holding cells, restroom and shower facilities, and during transportation to and from court appearances;

e. inadequate cleaning, hygiene, decontamination, and disinfecting supplies and procedures, both for the inmates and the staff;

f. failure to provide adequate personal protective equipment ("PPE") to Neko Wilson and other incarcerated people and failure to mandate the use and regular replacement of such equipment by both staff and people incarcerated in the jail, particularly equipment designed for single use (such as single-use disposable surgical masks); and

g. failure to timely and adequately educate people incarcerated in the jail about the virus and prevention methods.

3. Absent intervention from this Court to align the operation of the Navajo County jail with public health principles—first and foremost, through the release of Neko

Wilson and as many other medically vulnerable detainees as possible, but also

through improved social distancing, testing, treatment, education, hygiene and

sanitation protocols for all others— incarcerated persons, jail staff, and the

community will face devastating, and in some cases deadly, irreparable harm.[5] The

dramatic outbreak at the Navajo County jail proves the need for immediate and

significant public health interventions.

4. Accordingly, Neko Wilson brings this emergency action pursuing two distinct

vehicles for relief: 1) a habeas petition seeking immediate release of himself as a

medically vulnerable inmate being held nonbondable since July 2, 2019;[6] and 2) in

the alternative an expedited process to determine the appropriateness of release for

Neko Wilson and other medically vulnerable and disabled inmates.[7] This relief is

---

[5] *See* Sandra E. Garcia, U.S. Prison Population Remained Stable as Pandemic Grew, N.Y. Times (May 14, 2020), https://cutt.ly/VyVvEwu.

[6] On June 30, 2020 the Arizona Court of Appeals granted Neko Wilson relief reversing the trial court's July 2, 2019 order that Neko Wilson be held without bond in the Navajo County jail and remanding the case to the trial court with instructions to set release conditions for Neko Wilson. *See Wilson v. Hon. Robert Higgins/State of Arizona,* No. 1CA-SA20-0095 (June 30, 2020). Unfortunately, Judge Higgins has failed to reinstate Neko Wilson's original release on his own recognizance and instead has expressed his intent to keep Neko Wilson held without bond or release conditions until the Court can conduct a "scheduling conference" sometime between July 7-13, 2020 to set a future date for a release conditions hearing. https://www.azcourts.gov/Portals/0/OpinionFiles/Div1/2020/1%20CA-SA%2020-0095%20-%20Wilson.pdf.

[7] Alternatively, this Court may order release of Neko Wilson, a medically vulnerable and/or disabled person pending resolution of the Plaintiff's habeas petition in the form of enlargement, a remedy sometimes referred to as "release" or "bail," in which an individual remains in custody, but the place of custody is enlarged by the Court. *See*

being sought pursuant to: 22 U.S.C. § 2241, 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act, all of which Defendants are violating.

5. These measures are necessary to ensure the health and safety of inmates like Neko Wilson, other incarcerated vulnerable and disabled inmates, Navajo County Sheriff's Office staff, and the wider Navajo County community. Given the rapid and ongoing exponential spread of COVID-19 in Navajo County, immediate action is required.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 2241 (habeas corpus); 42 U.S.C. § 12131 *et seq.* and 29 U.S.C. § 794 (disability discrimination); 42 U.S.C. § 1983 (civil rights action); and 28 U.S.C. § 1331 (federal question).

7. This Court may grant relief under 28 U.S.C. §§ 2241 (habeas corpus), 2201- 02 (declaratory relief), and 1651 (All Writs Act); Federal Rules of Civil Procedure 65 (injunctive relief); as well as the Fourteenth Amendment to the U.S. Constitution.

8. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 2241(d) because the Plaintiff Neko Wilson is in custody in this judicial district and venue. Venue is

*Declaration of Professor Judith Resnik*, filed in *Money, et al. v. Jeffreys*, Case No. 20-cv-02094 (N.D. Ill.), Dkt. No. 24-3, available at
https://law.yale.edu/sites/default/files/area/center/liman/2020.04.08_declaration_of_prof._judith_resnik_-_money_v._jeffreys.pdf

proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events

or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

9. Plaintiff Neko Wilson is a 38-year-old resident of California who has been in

custody at the Navajo County jail since July 2, 2019 for an alleged 2009 probation

violation.  He has not been found to have violated his probation and is presumed

innocent.  Neko Wilson suffers from asthma and hypertension which are pre-

existing medical conditions that the Centers for Disease Control ("CDC") have

identified as making Neko Wilson more vulnerable to becoming severely ill with

COVID-19.  If released pending the resolution of his case, Neko Wilson can self-

quarantine at his family's home in Modesto, California while his case is resolved.[8]

Neko Wilson's medical conditions also make him a person with a disability as

defined under the ADA and Section 504 of the Rehabilitation Act ("Section 504").

10. Respondent-Defendant David Clouse is the Navajo County Sheriff. Pursuant to

A.R.S. §§ 11-441(A)(5) and 31-101, Sheriff Clouse's duty is to oversee the

Navajo County jail and the inmates in the jail including Neko Wilson. Sheriff

---

[8] On June 30, 2020, Neko Wilson's Special Action in 1 CA-SA 20-0095 concerning him being non-bondable was accepted by the Arizona Court of Appeals who ruled the no bond order was unlawful and remanded Neko Wilson's case to the trial court with an order to set release conditions.  He also has a Petition for Review, CR-20-0029-PR, currently pending before the Arizona Supreme Court which seeks the dismissal of the petition to revoke his probation on due process grounds.
https://www.azcourts.gov/Portals/0/OpinionFiles/Div1/2020/1%20CA-SA%2020-0095%20-%20Wilson.pdf.

Clouse is the final policymaker for running and administering the Navajo County jail. Sheriff Clouse has custody over Neko Wilson. He is sued in his official capacity only.

11. Respondent-Defendant Navajo County is a county in Arizona where the jail at issue is located. Neko Wilson resides in the Navajo County jail operated and maintained by Navajo County. Navajo County is a public entity for purposes of the ADA. Navajo County is a recipient of federal financial assistance for the purposes of Section 504.

12. As the facts set forth below demonstrate, Sheriff Clouse and Navajo County have a policy, practice, or custom of subjecting inmates in the jails, including Neko Wilson, to unconstitutional conditions and/or ratifying constitutional deprivations.

## FACTUAL ALLEGATIONS

I. **COVID-19 Poses an Ever Increasingly Significant Risk of Serious Illness, Injury, and Death to Plaintiff Neko Wilson and Other Medically Vulnerable and Disabled Inmates.**

13. The novel coronavirus that causes COVID-19 has led to a global pandemic. There are more than 10 million reported COVID-19 cases throughout the world, of which more than 2,452,000 are in the United States.[9]

14. More than 495,000 individuals worldwide have died as a result of COVID- 19, including more than 124,810 in the United States.[10] These numbers are growing,

---

[9] *WHO Coronavirus Disease (COVID-19) Dashboard, WORLD HEALTH ORG.* (June 28, 2020), https://covid19.who.int/.

with almost 190,000 new cases worldwide in the 24-hour period between June 27th

and June 28th alone.[11] Notwithstanding that Arizona ranks 43rd out of the 50

states, D.C. and Puerto Rico in the number of tests completed per 1000 people,

COVID-19 positive cases in Arizona increased from one as of March 2, 2020 to

79,215 as of June 30, 2020, with 3,625 in Navajo County.[12] Only Maricopa, Pima

and Yuma counties have more positive cases than Navajo County.  In total, 1,632

people have died in Arizona due to COVID-19, and 125 people have died in

Navajo County alone.[13]  Hospitals in Arizona are increasingly stretched thin.[14]

---

[10] *Id.*

[11] *Id.*

[12] *See Data Dashboard: Summary*, ARIZONA DEPT. OF HEALTH SERVICES (accessed June 30, 2020), https://cutt.ly/muxkCB4; *Data Dashboard: Confirmed COVID-19 Cases by Day*, ARIZONA DEPARTMENT OF HEALTH SERVICES (accessed June 28, 2020), https://www.azdhs.gov/preparedness/epidemiology-disease-control/infectious-disease-epidemiology/covid-19/dashboards/index.php; *State Health Facts: COVID-19 Te* , KAISER FAMILY FOUNDATION (accessed June 15, 2020), https://cutt.ly/zuxzHn7.

[13] *See Data Dashboard:  COVID-19 Deaths,* ARIZONA DEPARTMENT OF HEALTH SERVICES (accessed June 30, 2020), https://cutt.ly/SuvyYvc.

[14] *See* Kristina Fiore, *Banner Health Sounds Alarms on COVID Crisis in Arizona*, MEDPAGETODAY (June 11, 2020), https://cut.ly/AuvyWmX.; *Hospital Bed Usage & Availability*, ARIZONA DEPARTMENT OF HEALTH SERVICES (accessed June 6, 2020), https://www.azdhs.gov/preparedness/epidemiology-disease-control/infectious-disease-epidemiology/covid-19/dashboards/index.php (reporting that 76% of ICU beds and 80% of inpatient beds in Arizona were in use); Stephanie Innes, *Arizona's largest health system reaches capacity on ECMO lung machines as COVID-19 cases in the state continue to climb,* AZ REPUBLIC (June 6, 2020) (reporting that Arizona is experiencing a spike in COVID-19 cases leading to record highs in ICU and ventilator use and the largest  health system in the state reached capacity for ventilators), https://cutt.ly/0uvyk1d.

15. On March 11, 2020, Governor Doug Ducey declared a state of emergency in Arizona due to COVID-19.[15] Governor Ducey's most recent May 12, 2020 executive order directs individuals to socially distance, recommends that the medically vulnerable continue to shelter at home when possible, and requires businesses that are reopening to implement policies that ensure physical distancing and limit congregations to less than 10 people where feasible.[16] On June 17, 2020 Governor Ducey issued Executive Order 2020-40 "Containing the spread of COVID-19".[17]

16. The Navajo County Board of Supervisors also issued an emergency declaration related to COVID-19 on June 23, 2020.[18]

17. Importantly, the county and state-wide emergency—while very real and very pressing—pale in comparison to the emergency within the Navajo County jail.

[15] *Declaration of State of Emergency by the Governor of the State of Arizona*, OFFICE OF THE GOVERNOR OF ARIZONA (Mar. 11, 2020), https://azgovernor.gov/sites/default/files/declaraton_0.pdf.

[16] *Executive Order 2020-36, Stay Healthy, Return Smarter, Return Stronger,* STATE OF ARIZONA (May 12, 2020), https://cutt.ly/puvySWW.

[17] *Executive Order 2020-40, Containing the Spread of COVID-19, Continuing Arizona Mitigation Efforts by the Governor of the State of Arizona,* OFFICE OF THE GOVERNOR OF ARIZONA (June 18, 2020), https://azgovernor.gov/file/35048/download?token=ad-EoFB8.

[18] *Navajo County Calls on Residents to Help Prevent Spread of COVID-19.* NAVAJO COUNTY (June 23, 2020), https://www.navajocountyaz.gov/Press-Release/ArtMID/11983/ArticleID/80/Media-Release.

18. The rapid rate of spread inside the close quarters of the Navajo County jail is the result of the virus being highly contagious and known to spread from person to person through respiratory droplets, close personal contact, and from contact with contaminated surfaces and objects.[19]

19. A high percentage of individuals with COVID-19 are either asymptomatic or pre-symptomatic—meaning they can rapidly yet unknowingly spread the virus to others before developing any symptoms themselves.[20]

20. Since COVID-19 spreads silently among people who do not show symptoms, universal testing in correctional facilities to identify COVID-19 infections early—even among individuals experiencing no symptoms—and medically isolating all individuals infected with COVID-19 are keys to preventing COVID-19 from spreading.

21. Other correctional systems throughout the country have recognized the particular risks to incarcerated persons and staff alike of COVID-19 spread and offered universal or mass testing of all incarcerated persons in correctional facilities,

---

[19] *Interim Infection Prevention and Control Recommendations for Patients with Suspected or Confirmed Coronavirus Disease 2019 (COVID-19) in Healthcare Settings,* CTRS. FOR DISEASE CONTROL & PREVENTION (May 18, 2020), https://cutt.ly/ztRAo0X.

[20] 19 Roz Plater, *As Many as 80 Percent of People with COVID-19 Aren't Aware They Have the Virus*, HEALTHLINE (May 28, 2020), https://cutt.ly/uyVOSi7 ("In [a Journal of the American Medical Association] study, researchers reported on people who tested positive for COVID-19 were without symptoms.").

finding as a result that the virus was far more widespread than they had identified when simply testing based on symptoms or direct contact with persons who were known to have been infected.[21]

22. Once contracted, COVID-19 can cause Neko Wilson, and other medically vulnerable and disabled inmates, severe damage to lung tissue, including a permanent loss of respiratory capacity, and it can damage tissues in other vital organs, such as the heart and liver.[22]

23. People of any age, including Neko Wilson, who have certain disabilities, defined by federal law, including lung disease, heart disease, chronic liver or kidney disease (including hepatitis and dialysis patients), diabetes, hypertension, compromised immune systems (such as from cancer, HIV, or autoimmune disease), blood disorders (including sickle cell disease), developmental disabilities, severe obesity and moderate to severe asthma, face an elevated risk from COVID-19.[23]

24. COVID-19 patients in higher-risk categories, including Neko Wilson, who develop serious illness will need advanced support, including access to specialized

---

[21] Cart Aspinwall, *These Prisons Are Doing Mass Testing For COVID-19-And Finding Mass Infections,* MARSHALL PROJECT (APRIL 24, 2020), https://cut.ly/vuxm8sM.

[22] *See Coronavirus Disease 2019 (COVID-19):  Clinical Care Guidance,* CTRS. FOR DISEASE CONTROL & PREVENTION (June 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

[23] *See supra*, note 5.

equipment (including ventilators and dialysis machines, which are in limited supply), and entire teams of care providers. Critical COVID-19 patients may require 1:1 or 1:2 nurse-to-patient ratios, respiratory therapists, and intensive care physicians. The drastic measures implemented by government officials since March are meant to "flatten the curve" of the spread of the disease, i.e. to ensure that health care systems are not overwhelmed by too many serious COVID-19 cases at once.

25. In serious cases, COVID-19 causes acute respiratory disease syndrome ("ARDS"), which is life-threatening: even with proper medical care, individuals with ARDS have a 30% mortality rate.[24] And even in non-ARDS cases, COVID-19 can severely damage lung tissue, which requires an extensive period of rehabilitation, and in some cases, causes permanent loss of breathing capacity.[25] COVID-19 may also target the heart, causing a medical condition called myocarditis, or inflammation of the heart muscle. Myocarditis can reduce the heart's ability to pump.[26] This reduction can lead to rapid or abnormal heart rhythms in the short

[24] *Letter from Faculty at Johns Hopkins School of Medicine, School of Nursing, and Bloomberg School of Public Health to Hon. Larry Hogan, Gov. of Maryland* (Mar. 25, 2020), https://cutt.ly/stERiXk.

[25] Panagis Galiatsatos, *What Coronavirus Does to the Lungs,* JOHN HOPKINS MED. (Apr. 13, 2020), https://cutt.ly/PyVsWxP.

[26] Erin Donnelly Michos, *Can Coronavirus Cause Heart Damage?*, JOHNS HOPKINS MED. (Apr. 24, 2020), https://cutt.ly/KyVsnmf.

term, and heart failure limiting a person's capacity to work and exercise in the long term.

26. COVID-19 can also trigger an over-response of the immune system and result in widespread damage to other organs, including permanent injury to the kidneys.[27] Complications from COVID-19 can manifest at an alarming pace. Patients can show the first symptoms of infection in as little as two days after exposure, and their condition can seriously deteriorate in as little as five days or sooner.[28]

27. Younger and healthier people are not immune. Some who contract COVID-19 will have severe cases and require supportive care, which includes supplemental oxygen, positive pressure ventilation, and in extreme cases, extracorporeal mechanical oxygenation.[29]

28. There is currently no vaccine against COVID-19, nor is there any established medical treatment for COVID-19.[30]

[27] C. John Sperati, *Coronavirus: Kidney Damage Caused by COVID-19*, Johns Hopkins Med. (May 14, 2020), https://cutt.ly/EyVscWm.

[28] *See Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19)*, Ctrs. for Disease Control & Prevention (June 2, 2020), https://cutt.ly/etRPVRl.

[29] Lara S. Shekerdemian, Nabihah R, Mahmood, Katie K., et al., *Characteristics and Outcomes of Children with Coronavirus Disease 2019 (COVID-19) Infection Admitted to US and Canadian Pediatric Intensive Care Units*, JAMA Pediatrics (May 11, 2020), https://jamanetwork.com/journals/jamapediatrics/fullarticle/2766037.

[30] *Coronavirus*, World Health Org. (accessed June 4, 2020), https://cutt.ly/ztWyf7e ("At this time, there are no specific vaccines or treatments for COVID-19.").

29. The need for care, including intensive care, and the likelihood of death, is much higher for Neko Wilson, and other medically vulnerable and disabled inmates, from COVID-19 infection than from influenza. According to recent estimates, the fatality rate of people infected with COVID-19 is about ten times higher than a severe seasonal influenza, even in advanced countries with highly effective health care systems. For people in the highest risk populations, like Neko Wilson, the mortality rate of COVID-19 infection is about 13.2 percent.

30. Patients who do not die from serious cases of COVID-19 may face prolonged recovery periods, including extensive rehabilitation from neurologic damage, loss of digits, and loss of respiratory capacity.

31. Social distancing—deliberately keeping at least six feet of space between persons to avoid spreading illness[31]—and a vigilant hygiene regimen, including frequent hand-washing, use of alcohol-based hand sanitizers, frequent cleaning and disinfecting of any surfaces touched by any person, and the use of personal protective equipment ("PPE") such as masks, are the only known effective measures for protecting against transmission of COVID-19.[32]

32. While hand washing and disinfecting surfaces are advised, social distancing—remaining physically separated from known or potentially infected

---

[31] *CS 316182-A, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, CTRS. FOR DISEASE CONTROL & PREVENTION (Mar. 23, 2020), https://cutt.ly/LyVWfed.

[32] *Coronavirus Disease 2019 (COVID-19): Protect Yourself*, CTRS. FOR DISEASE CONTROL & PREVENTION (accessed June 4, 2020), https://cutt.ly/GyVELfw.

individuals—is the main strategy to prevent infection.

**II.** **The Navajo County Jail is Experiencing a Sudden Increase of COVID-19 Cases Because of Defendants' Failure to Take Reasonable Steps to Protect Neko Wilson and Others in the Jail.**

33. Persons, including Neko Wilson, who are incarcerated at the Navajo County jail face a particularly acute threat of infection, illness, permanent injury, and death from COVID-19. This is because the Navajo County jail is a breeding ground for infectious diseases, due to such factors as close quarters that hinder social distancing; shared cells, bathrooms, telephones, eating spaces, and common areas; high rates of turnover and mixing, both among the detained population and between detained persons and staff, who may be infected by persons outside the facility; poor ventilation; inadequate access to proper and sufficient hygiene supplies; insufficient cleaning and access to cleaning supplies; and substandard medical services.

34. The exponential growth of COVD-19 cases comes despite Navajo County jail's purported implementation of a COVID-19 policy.[33] The policy itself fails to meet the most basic public health guidelines and, even in its most rudimentary form, is not reliably implemented in the jail. Neither the Sheriff nor the County has adequately supervised jail staff to ensure compliance with public health guidance to address the risk of COVID-19 transmission, or even with this inadequate policy.

---

[33] *See supra*, note 2,  6/25/2020-AZ Rep and ABC News Article, https://www.abc15.com/news/local-news/investigations/dozens-of-navajo-county-inmates-in-isolation-after-potential-coronavirus-exposure

As a result, Neko Wilson and the other people detained at the Navajo County jail live under an ongoing threat of contracting a potentially fatal infection, as they are prevented from protecting themselves from contracting and falling ill with the virus.

35. Cognizant of the heightened risks of COVID-19 in custodial settings, the Centers for Disease Control and Prevention ("CDC") issued specific guidance on March 23, 2020 for dealing with COVID-19 in correctional facilities, including local jails (the "CDC Guidelines").[34] The initial CDC Guidelines acknowledge that incarcerated people are often forced to exist "within congregate environments" that "heighten the potential for COVID-19 to spread once introduced[,]" especially given that "[t]here are many opportunities for COVID-19 to be introduced into a correctional or detention facility," including "daily staff ingress and egress" as well as "high turnover" of "admit[ted] new entrants."[35] In light of these concerns, the CDC Guidelines recommend that detention facilities "explore strategies to prevent over-crowding of correctional and detention facilities during a community outbreak."[36] On May 6, 2020, after 86 percent of jurisdictions reported at least one laboratory-confirmed case of COVID-19 from a total of 420 correctional and

---

[34] *CS 316182-A, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, CTRS. FOR DISEASE CONTROL & PREVENTION (Mar. 23, 2020), https://cutt.ly/LyVWfed.

[35] *Id.*

[36] *Id.*

detention facilities, the CDC published a report entitled "COVID-19 in Correctional and Detention Facilities — United States, February–April 2020." The Report advises that: "Prompt identification of COVID-19 cases and consistent application of prevention measures, such as symptom screening and quarantine, are critical to protecting incarcerated and detained persons and staff members."[37]

36. The CDC Guidelines also recommend a number of steps that correctional facilities can take to attempt to mitigate the risk of the spread of the virus.[38] These include:

    a. Perform pre-intake screening and temperature checks for all new entrants, "enforce increased space between individuals" in waiting areas during intake, and "consider quarantining all new intakes for 14 days before they enter the facility's general population," making sure to avoid mixing people in this routine intake cohorted population with people who might otherwise be quarantined due to exposure to COVID-19;

    b. Adopt and enforce social distancing strategies to increase space between individuals, including by rearranging bunking to ensure that beds are at a minimum six feet apart in all directions, increasing space in lines and waiting areas, staggering meals and rearranging seating so that detainees

[37] *COVID-19 in Correctional and Detention Facilities — United States, February–April 2020*, CTRS. FOR DISEASE CONTROL & PREVENTION MORBIDITY &MORTALITY WKLY. REP. (May 6, 2020), https://cutt.ly/4yVWTOE.

[38] CTRS. FOR DISEASE CONTROL & PREVENTION, *supra* note 33.

are sitting on only one side of the table and are separated with adequate

space;

c.  Avoid unnecessary movements of incarcerated persons and staff, including

by "rearrang[ing] scheduled movements to minimize mixing of individuals

from different housing areas" and "restricting movement in and out of the

facility";

d.  Implement "intensified cleaning and disinfecting procedures" that clean and

disinfect high-touch surfaces and objects "[s]everal times per day," and

"[e]nsure adequate supplies to support intensified cleaning and disinfection

practices";

e.  "Thoroughly clean and disinfect all areas where the confirmed or suspected

COVID-19 case spent time," and ensure that people "performing cleaning

wear recommended PPE";

f.  "[E]nsure that incarcerated/detained individuals receive medical evaluation

and treatment at the first signs of COVID-19 symptoms," including an

evaluation "to determine whether COVID-19 testing is indicated" and

medically isolate persons known or suspected to have COVID-19;

g.  Quarantine close contacts of confirmed or suspected COVID-19 cases, with

close monitoring of symptoms and temperature checks twice per day,

restrictions of quarantined individuals from leaving the facility, and both

staff and incarcerated persons wearing face masks at all times if feasible

and where individual quarantine space is not available;

h. When quarantining close contacts of confirmed or suspected COVID-19 cases in groups, "be especially mindful of those who are at higher risk of severe illness from COVID-19. Ideally, they should not be cohorted with other quarantined individuals. If cohorting is unavoidable, make all possible accommodations to reduce exposure risk for the higher-risk individuals. (For example, intensify social distancing strategies for higher-risk individuals).";

i. Suspend any co-pays for incarcerated people seeking medical evaluation for respiratory symptoms;

j. Ensure sufficient stocks of hygiene and cleaning supplies, no-cost access to soap (liquid soap where possible), including tissues; paper towels; alcohol-based hand sanitizer; cleaning supplies effective against the coronavirus; and recommended personal protective equipment like face masks, disposable medical gloves, and N95 respirators;

k. Conduct verbal symptom check and temperature check for all staff daily upon entry into the facility; and

l. Provide "clear information" to incarcerated persons and staff about COVID- 19, including by posting signage throughout the facility communicating COVID-19 symptoms, proper procedures for incarcerated persons/staff experiencing symptoms, and hand hygiene instructions, educating incarcerated persons/staff about the presence of COVID-19 cases within a facility and the need to increase social distancing and maintain

hygiene precautions, and training staff on "the need to enforce social

distancing and encourage hygiene precautions."

37. The Navajo County jail does not adequately provide the mitigation measures

that public health experts and the CDC recommend.

38. Specifically, Defendants' failure to adopt and implement adequate policies

and procedures include:

***Hazardous Intake Processes and Conditions***

39. Persons taken into custody at the Navajo County jail are at risk of contracting

COVID-19 from the moment they arrive.

40. Although average daily bookings at the Navajo County jail have been reduced in

light of the pandemic, Navajo County is still processing a large number of people

in and out of the jail on a daily basis.

41. The Navajo County jail's booking process involves property intake, medical

screening, fingerprinting, photographing, and a warrants check, followed by a

potential interview by probation or pre-trial services and potential appearance at

Initial Appearance Court or before a Magistrate. The entire process of arrest,

transfer to the jail, and booking can take between 2-15 hours, and incarcerated

persons must make their first appearance before a Magistrate within 24 hours.[39]

42. Defendants have not implemented effective and necessary measures to address the

risk of the spread of COVID-19 during booking, including a failure to implement

___

[39] Rule 4 Arizona Rules of Criminal Procedure.

social distancing measures during processing. Indeed, after a rudimentary

screening process, individuals are then put in a holding "tank," sometimes for

more than a day and a half, with numerous other people.

43. Individuals also sit shoulder to shoulder on a bench at various times, waiting

to be booked.

44. None of the individuals in the "tank" receive masks.

45. Detention officers did not wear masks from the first positive case in March 2020

until June 16, 2020.

46. Individuals admitted into the jail are not tested for COVID-19 upon their arrival,

in many instances even if they are showing a symptoms or report having had direct

contact with someone known to have tested positive for COVID-19.  As recently

as June 28, 2020, a person who was booked into the jail and put in Neko Wilson's

pod told the jail staff he had been in contact with someone who has COVID-19.

The jail staff did not test this recently booked person.  Witnesses will testify the

person was coughing and experiencing COVID-19 like symptoms.  The recently

booked individual was released from the jail within a few days.  Another inmate

who was the cellmate of the released inmate then began experiencing COVID-19

symptoms.  Another second inmate in the pod has also been removed from his cell

recently after displaying COVID-19 symptoms.

47.  Between June 25, 2020 and June 26, 2020 five new people have been brought

into the pod where Neko Wilson is located.  Two of these persons had been

recently arrested and came from booking without being quarantined.  The other

three persons had been in Neko Wilson's pod previously. These three had displayed symptoms and had been placed into quarantine. After being in quarantine for fourteen days, the three men were returned to general population. None of these three people were tested for COVID-19 despite showing symptoms and being quarantined before being returned to the general population.

48. Many of the people who are being booked into Navajo County jail are arrested while traveling through Arizona on Interstate 40. This has caused fear and anxiety amongst the jail population because these individuals are only being quarantined in many instances for a few hours and then if they are not displaying symptoms being brought to general population. Some of the recently booked individuals started experiencing symptoms within hours or days of being brought to the jail's general population and despite requests for medical treatment have received no medical treatment or testing.

49. Many incarcerated people at the jail are in custody on a misdemeanor charge, or failure to pay fines. Up until June 8, 2020, only one of the guards and one nurse routinely wore masks. Neko Wilson and other inmates have repeatedly asked for masks but were denied or simply ignored until June 16, 2020 when inmates were finally each given one cloth mask. None of these masks have since been laundered or disinfected.

50. The screening done at the jail also does not cover the full range of symptoms associated with the virus, which can include tiredness, loss of taste or smell, and

headache, as well as less common symptoms including rash, nausea, vomiting, and diarrhea.[40]

51. Persons coming into the jail with COVID-19 can be pre-symptomatic at intake only to become symptomatic later during incarceration, or can even remain asymptomatic, and nevertheless spread the virus to others.

52. Limiting testing to people who are symptomatic or who know they were in contact with someone with COVID-19 prior to their incarceration fails to identify people who may have COVID-19—and can infect other incarcerated persons and jail staff—but are pre-symptomatic, asymptomatic, or were unaware that they had contact with someone with COVID-19.

53. People who are not identified at booking as either symptomatic or having had contact with someone with COVID-19 prior to their incarceration are still being placed into a housing pod by classification and without being properly quarantined.

54. As of mid-June, many newly admitted persons were being assigned directly to housing units without having completed any cohorting period.

55. Without testing, the cohort group inherently mixes a group of people whose COVID-19 status is unknown and who may be pre-symptomatic or asymptomatic spreaders of COVID-19 with individuals who may not yet be infected. People with

---

[40] *Coronavirus Disease 2019 (COVID-19) – Symptoms and Causes*, MAYO CLINIC (accessed June 4, 2020), https://cutt.ly/RyVTJFu; *Coronavirus Disease 2019 (COVID-19)– Symptoms of Coronavirus*, CTRS. FOR DISEASE CONTROL & PREVENTION (accessed May 13, 2020), https://cutt.ly/byVTCfo.

COVID-19 may transmit the disease to non-infected members of the group at any time while cohorted together, and thus non-infected individuals may contract the virus and become symptomatic or remain contagious after they have been placed into the general population. Members of the cohort are not tested before being discharged from the intake cohort unit.

56. The Navajo County jail has also failed to prevent individuals in the routine intake cohort from mixing with people outside the cohort. This includes mixing people from the routine intake cohort during court transport with incarcerated persons who are in quarantine for having had contact with infected individuals and who have not been tested to determine if they are infected.

***Insufficient Social Distancing In General Population***

57. Defendants have failed to implement or even attempt reasonable measures to implement social distancing at the Navajo County jail, and they have failed to make reasonable and necessary modifications to practices, plans, or protocols to enable social distancing. Indeed, social distancing is not occurring with respect to housing, meals, recreation, or any other aspect of life inside the Navajo County jail.

58. Even with the reduction in the population of incarcerated individuals, the Navajo County jail still fails to comply with the CDC's recommendation for people to remain six feet apart at all times due to the way Defendants are currently choosing to house the inmates.

59. Housing units are frequently on security override due to staffing shortages and the inmates are on lockdown for up to fifty hours at a time, which means that inmates are kept at their beds inches from others, or in cells with cellmates without social distancing, for extended periods of time. Some cells have 3 and 4 people, with one person sleeping on the floor. During these lockdowns Neko Wilson and the other inmates are not able to leave their cells, shower, use the phone, report medical concerns, or clean or sanitize their cells.

60. When not in their cells, inmates use common spaces together, sharing tables, telephones, video terminals, and showers, all within far less than six feet of each other. While Defendants attempt to stagger dayroom access, shared day rooms are not large enough to allow for the large number of people to maintain social distancing.

61. At meal time, meals are not staggered, which results in inmates being forced to stand close to each other waiting for food, and having to sit close together at crowded tables.

62. Social distancing is not at all encouraged or enforced by the staff.

63. Inmates are next to each other when jail staff come to the housing units to distribute medications.

### *Lack of Personal Protective Equipment (PPE) and Cleaning*

64. Individuals incarcerated at the Navajo County jail do not receive adequate products to maintain proper hygiene, and there is no attempt by Defendants to ensure adequate cleaning to prevent transmission of the virus.

65. The jail relies on the inmates themselves within their respective units to perform all cleaning, including common areas and individual cells. They are left to create— or not— their own systems to organize who will do the cleaning and when, with no supervision by jail staff to ensure that cleaning is done at all, let alone that it is done safely and adequately to kill the virus. These inmates are generally not provided with sufficient protective equipment, such as gloves, to conduct such cleaning and must use toilet paper to clean their living quarters.

66. Inmates share numerous high-touch surfaces for which the jails have not implemented any system to ensure that they are cleaned multiple times per day or between uses.

67. Telephones—which are generally not six feet apart—are not wiped down after each use.

68. In most units, individual tablets used for various functions, including email and internet access, are distributed to inmates randomly on a daily basis but are not cleaned after each use and often only cleaned once a day.

69. Inmates in all housing units or pods also share high touch items such as tables, chairs, and railings, without any provision by the jail to ensure they are regularly cleaned.

70. The cells, or housing units, are not cleaned when the jail is on lock down. Cleaning can happen once a day but some of the recent lockdowns have been 32 to 50 hours, so cleaning has not happened for that period of time. Inmates in a unit

are provided watered- down disinfectant—to be shared amongst them to clean the common surfaces of the entire unit and their cells.

71. Although the disinfectant requires that it remain wet on a surface for 5-10 minutes in order to properly work, staff do not reliably instruct incarcerated persons of those instructions and inmates often wipe off the disinfectant immediately after applying. Detention officers do nothing to ensure proper use of the disinfectant.

72. During March and April, the jail was on daily lockdown. Upon information and belief, that lockdown was lifted May 15, 2020. In early June the jail was again placed back on lockdown and has remained on daily lockdown to date. Upon information and belief, the daily lockdown was put back in place June 9, 2020.

73. Inmates are not given paper towels or rags and instead clean their cells with toilet paper. Any available rags or towels that are used to wipe down the various surfaces are only laundered twice a week. Rags or paper towels for cleaning have not been provided to Neko Wilson and other incarcerated persons for months. Currently, a trustee comes in and sprays the cell with what they are told is bleach and the liquid is left to dry on its own or wiped up with toilet paper.

74. Inmates, including Neko Wilson, incarcerated at the Navajo County jail also lack access to sufficient personal hygiene products. No hand sanitizer is available, and neither are paper towels. Incarcerated persons are left to use their bathing towel or toilet paper for all purposes.

75. On Wednesday and Sunday incarcerated persons are given a set of clothes, two small bars of soap, and toothpaste and a toothbrush.

76. Bed sheets are washed every other week, and blankets are laundered just once a month or longer. Inmates are provided one sheet and one blanket every couple of weeks.

77. The post-COVID-19 cleaning routine remains identical to the pre-COVID-19 procedure. The only difference now is now the inmates are no longer provided rags or towels to clean with.

78. Despite many requests the jail population were not provided masks until June 16, 2020. Now when they are out of their cell, they are supposed to wear a mask. Neko Wilson's current cellmate is a trustee. This person goes from housing unit to housing unit, including the quarantined housing units and then returns to the cell he shares with Neko Wilson. From March 2020 through June 16, 2020 no inmate was provided a mask. This was true even though trustees were allowed to enter and exit the quarantine unit(s).

***Lack of Appropriate Safeguards Employed After Suspected and Known Infected Persons are Identified and General Inadequacy of Testing***

79. Navajo County's policy, as of June 30, 2020, is that COVID-19 testing is reserved for symptomatic patients, at provider discretion and withholds testing of asymptomatic incarcerated persons who had direct contact with other people who contracted COVID-19. Rather than testing anyone who had direct contact with other people who had been infected, the policy calls for quarantining such incarcerated persons. Even if someone reports they had contact with someone

who had COVID they are not tested if they are not showing symptoms. They are housed with the general population soon after entering the jail.

80. In practice, such asymptomatic people have not been quarantined individually, but instead have been quarantined in groups. When testing is not conducted, any asymptomatic people in the pod who contracted COVID-19 are not identified and instead are left in the pod to potentially infect people who had not yet been infected, thereby creating an unreasonable risk of multiplying the spread of the virus to all persons within the pod.

81. There are 15 cells in Neko Wilson's pod or housing unit. These 15 cells are broken down into 3 groups of 5 cells. 5 cells or 15-20 men are let out into the common area at a time and the other 10 cells of 30-40 men remain on lockdown. Currently all inmates are locked down in the pods a majority of the time.

82. Primarily relying on symptoms-based testing is particularly problematic in light of Defendants' failure to consider the full scope of COVID-19 symptoms, as described above. Neko Wilson and other inmates have informed jail or medical staff they were suffering from known symptoms of COVID-19, but are not tested because they did not meet Defendants' limited criteria. In addition, other incarcerated persons have reported symptoms to jail staff that meet Defendants' symptom criteria for testing and are nevertheless denied testing. Neko Wilson has offered to pay for his own test but has been denied the test. Upon information and belief, the jail does not test inmates to conceal the level of infection among the inmates.

83. Primarily relying on symptoms-based testing is also problematic because incarcerated persons are deterred from reporting symptoms to staff due to the conditions Defendants impose on them if they report their symptoms. When a person is symptomatic and is tested for COVID-19 or tests positive for COVID-19 at the Navajo County jail, they are placed into an isolation pod that individuals have likened to punitive segregation ("the hole"). They are confined in their cells up to 24 hours per day and allowed to leave their cells on rare occasion to shower or to stretch. They are not allowed access to telephones while in quarantine. Their belongings are taken from them.

84. Medical care is inadequate—incarcerated persons kept in their isolation units see staff who are not necessarily medically trained once per day at most for a limited symptoms and temperature check. A symptoms check is not appropriate for patients diagnosed with, or suspected to have, COVID-19. Patients with known COVID-19 diagnoses should receive clinical monitoring of their condition given the risk of rapid clinical deterioration post infection.

85. Given his asthma and family history of high blood pressure and hypertension, Neko Wilson has asked to be tested for COVID-19 on several occasions.  Neko Wilson has repeatedly been denied a COVID-19 test due to his lack of certain symptoms.

86. Arizona and Navajo County are experiencing major and severe fires.  The air inside of the jail has been seriously impacted.  Neko Wilson and many other incarcerated persons have experienced or are having difficulty breathing.  This

was particularly true June 20 and June 21 of this year.  On those dates Neko Wilson was having difficulty breathing and was experiencing a running nose. Neko Wilson did not report these symptoms because he feared he would have been placed in quarantine with sicker individuals known to have COVID-19 symptoms.

87. Given the recent attention Neko Wilson's case has garnered, the jail finally began taking his blood pressure.  Neko Wilson has previously requested his blood pressure be taken on multiple occasions.  Prior to June 2020, the last time Neko Wilson's blood pressure was taken was in January or February 2020.  At that time his blood pressure was high.  Since having his blood pressure taken in January or February, Neko Wilson has requested his blood pressure be taken on several occasions.  The jail refused citing the risks associated with COVID-19.  The jail finally began taking Neko Wilson's blood pressure again on June 16, 2020.  The results of the blood pressure tests have been as follows: June 16, 2020 157 over 96, June 18, 2020 140 over 94, June 23, 2020 149 over 98, June 24 140 over 88 and June 26, 2020 150 over 92.

88. During the week of June 21, 2020 Neko Wilson was finally prescribed Lisinpril after being diagnosed with high blood pressure or hypertension, a high risk disability according to the CDC.  Despite taking this medication Neko Wilson's blood pressure has remained high and on June 30, 2020 the jail nurse doubled the dosage from 10mg to 20mg due to Neko Wilson's blood pressure remaining dangerously high.

89. Upon information and belief, the Sheriff is still continuing to arrest and book people into the jail for traffic warrants, outstanding fines and fees, misdemeanors and non-violent felonies despite neighboring counties halting these types of bookings due to the spread of COVID-19.

90. While in the jail, Neko Wilson has experienced plumbing and sewage problems in his housing unit. Sewage and water have been allowed to remain in cells for days. When Neko Wilson and other incarcerated persons report health concerns those concerns are not responded to for days and in many instances not at all. The sewage problem was only addressed after a video of Neko Wilson's cell was posted on social media.

91. From June 24, 2020 through June 26, 2020 Neko Wilson has requested he be given a physical given his medical conditions and the health crisis at Navajo County jail. Neko Wilson has made the request on the kiosk in his housing unit. The only time a person can make a request for medical care on the kiosk is when they are not on lockdown, which is only a few hours a day and sometimes not at all. When the request is made, the jail does not immediately respond. The next time an inmate is off lockdown, which in some instances is 32 hours, the inmate can go back and check the kiosk for a response. Neko Wilson's requests for medical care or to fix the problems with the toilet and sewage in his cell routinely are not responded to. Neko Wilson's requests for a physical on June 25, 2020 and June 26, 2020 have been deleted from the kiosk and not responded to. Neko Wilson is afraid to make other requests because of fear of retaliation. Neko

Wilson has asked if he or his family could pay for a physical examination and was told no.  Throughout the year Neko Wilson has been in Navajo County jail he has not been given a single physical examination.

92. Other incarcerated persons who have experienced symptoms associated with COVID-19 have declined to seek attention for fear of retaliation or being quarantined with sicker inmates.

93. The new policy announced recently by Navajo County in response to questions from the media would be dangerously inadequate even if it were implemented. Under the announced policy, testing is still only implemented for those who have contact with an incarcerated person who has a positive COVID-19 test and have certain symptoms.  However, not all who have symptoms and are quarantined are tested.    Another concern is the high number of false negative test results. Because of this false negative rate, even if the jail were now testing asymptomatic known contacts of people who have tested positive for COVID-19, such a policy will not result in the testing of people who have contact with an infected person who had a false negative test result.

94. Given the congregate setting at the Navajo County jail, anything short of offering testing for every individual creates an unreasonable risk of transmission and spread of a potentially fatal infection and disease. This is evident given the exponential growth of COVID-19 positive cases in the Navajo County jail and throughout Navajo County in just the past two weeks.

95. Absent universal testing, Defendants cannot identify those who are infected, and timely initiate medical monitoring and treatment for them. Given the well-known and obvious risks that patients infected with COVID-19 can deteriorate rapidly, and can infect others, Defendants' failure to implement universal testing has already created an unreasonable risk of transmission of COVID-19.

96. Upon information and belief, medical staff check temperatures without replacing gloves between uses and utilize the same thermometer on all of the incarcerated people.

### *Lack of Protections for the Medically Vulnerable and Disabled*

97. Defendants have failed to implement policies or procedures to address the substantial risks of serious illness or death from COVID-19 infection to those, like Neko Wilson who are medically vulnerable by pre-existing chronic health condition/disability.

98. Defendants have not engaged in a process to release medically vulnerable incarcerated persons, like Neko Wilson, from the jail during this time where the congregate conditions inside detention facilities are inherently dangerous to the medically vulnerable and pose an unreasonable risk to them of serious illness or death. Many medically vulnerable and disabled people are currently housed in the jail, including Neko Wilson.

99. Despite clear guidance from public health authorities and the CDC that these prisoners, like Neko Wilson, are at a significant risk of death or serious illness,

Defendants have not taken any specific steps to reduce the risks for the medically vulnerable and disabled population that they have chosen to continue to detain.

100.    Defendants have housed people who are medically vulnerable, like Neko Wilson, with persons of unknown COVID-19 status.

101.    Defendants have not regularly screened medically vulnerable and disabled inmates, like Neko Wilson, for symptoms and fevers, even where they were exposed to someone with COVID-19 or have even tested positive for COVID-19.

102.    Defendants have failed to place medically vulnerable and disabled inmates, like Neko Wilson, in a separate quarantine unit away from sicker inmates or others with a known or suspected COVID-19 case.

103.    Defendants have not universally tested this population, not prohibited housing this medically vulnerable and disabled population, like Neko Wilson, in open dormitory housing units. Instead, the jail should ensure that the medically vulnerable and disabled are housed in single cells or implement long-term staff assignments by test-confirmed negative staff to prevent staff-prisoner transmission.

*Lack of Information and Education*

104.    Public health authorities and the CDC have made clear that education of both staff and people who are incarcerated is critical to help prevent the spread of COVID-19.

105.     Defendants have failed to provide the basic information about COVID-19 prevention recommended by the CDC and public health authorities to Neko Wilson, or other inmates within the jail.

106.     Neko Wilson was told by jail staff that they have been instructed to not provide information about the COVID-19 situation to the jail population.  This staff person also told Neko Wilson that there are many more sick staff and inmates and that some inmates have been taken to the hospital and placed on ventilators.

107.      Neko Wilson and other incarcerated persons have asked for information about how many inmates, staff and guards have been tested for COVID-19 and the results.  They have been routinely told they will not be provided that information.  This has caused anxiety and fear amongst the jail population.  The inmates believe COVID-19 is running rampant through the jail and that the jail is engaged in a misinformation campaign with them and the public.

**_Lack of Testing or Screening of Staff_**

108.      There is inadequate testing of correctional and civilian staff who have contact with inmates at the Navajo County jail.  Staff who work in the congregate environment of the jail, who travel to and from their homes and communities for work, are at risk of transmitting the virus to inmates in the jail, fellow staff, and to persons in their communities.

109.     There is no policy requiring that testing be offered to all officers or other staff or requiring even screening staff for symptoms when they enter the facility.  Instead, staff are instructed to stay home if they are sick with fever, cough, or

difficulty breathing and contact their healthcare provider. Defendants' policies do not describe criteria for offering testing to correctional and civilian staff who have contact with inmates at the Navajo County jail.

110. Detention officers routinely move between pods or units within the jail and do not change or disinfect gloves before entering a pod and until June 8, 2020 did not wear masks.

## CLAIMS FOR RELIEF

### First Claim For Relief

**Unconstitutional Conditions of Confinement in Violation of the Fourteenth Amendment of the United States Constitution 42 U.S.C. § 1983**

111. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth in this Count.

112. The Due Process Clause of the Fourteenth Amendment governs the treatment of state pretrial/pre-judgment detainees including Neko Wilson.

113. Persons in pretrial/pre-judgment custody are presumed innocent and therefore have greater protections against unconstitutional treatment than those convicted of crimes. As part of these protections, the government must provide these detainees with reasonably safe conditions of confinement and address serious medical needs that arise in jail.

114. The government violates these obligations by showing objective deliberate indifference to unsafe conditions of confinement.

115. Defendants have shown objective deliberate indifference to

Plaintiff Neko Wilson in violation of the Fourteenth Amendment.

116.     Defendants have made an intentional decision regarding the conditions under which Plaintiff Neko Wilson has been confined and regarding the denial of medical care and testing.

117.     Defendants have not taken reasonable available measures to abate or reduce the risk of serious harm from COVID-19, even though a reasonable custodian under the circumstances would have understood the high degree of risks involved—making the consequences of Defendants' conduct obvious.

118.     Defendants have subjected Plaintiff Neko Wilson to conditions of confinement that place him at substantial risk from COVID-19, a disease for which there is no known vaccine, treatment, or cure.

119.     By not taking such measures, Defendants have placed Plaintiff Neko Wilson at risk of irreparable harm or even death.

120.     As a result of Defendants' unconstitutional actions and omissions, Plaintiff Neko Wilson has suffered—and likely will continue to suffer—irreparable injury.

**Second Claim for Relief**

**Unconstitutional Punishment in Violation of the Fourteenth Amendment
to the United States Constitution 42 U.S.C. § 1983**

121.     Plaintiff incorporates herein the allegations set forth in the preceding paragraphs of this complaint.

122.     Under the Fourteenth Amendment, persons in pretrial custody cannot be punished as part of their detention. Punishment is established if the jailer's

conduct either is not rationally related to a legitimate, non-punitive, government

purpose or is excessive in relation to that scope.

123.     Defendants have subjected Plaintiff to unlawful punishment through acts

and omissions that are not reasonably related to a legitimate non-punitive

government purpose or are excessive in relation to that purpose. No legitimate

government purpose is served by unnecessarily subjecting Plaintiff Neko Wilson

to an excessive risk of exposure to and contracting COVID-19. Nor is any

legitimate government purpose served by failing to address these risks. Exposing

Neko Wilson to an excessive risk of contracting COVID- 19, and of serious illness

and death for those who are medically vulnerable and disabled, is not rationally

related to the purpose of pretrial/pre-judgment confinement, which is to ensure the

presence of a detainee at trial or probation revocation hearing, and the safe and

orderly operation of the detention facilities that hold them.

### Third Claim For Relief

**Petition for a Writ of Habeas Corpus
for Confinement in Violation of the
Fourteenth Amendment in the United States Constitution
28 U.S.C. § 2241**

124.     Plaintiff incorporates herein the allegations set forth in the preceding

paragraphs of this complaint.

125.     In light of COVID-19, continuing to detain Plaintiff Neko Wilson, a

medically vulnerable and disabled detainee is punitive, not rationally related to a

legitimate purpose, and/or excessive in relation to any legitimate purpose, in

addition to being objectively deliberately indifferent. Thus, his continued confinement violates his rights under the Fourteenth Amendment.

126.    Medically vulnerable and disabled detainees like Neko Wilson are particularly susceptible to infection, injury and death from COVID-19.

127.    As a result of his specific characteristics, there are no conditions of confinement that will adequately protect Plaintiff Neko Wilson, a medically vulnerable and disabled detainee from the risk of infection, serious injury and death from COVID-19. As such, the fact of his confinement violates the Fourteenth Amendment.

128.    In order to protect the people with the greatest vulnerability to COVID-19 from becoming infected with the virus, and also allow for greater risk mitigation for people held or working in a jail and the broader community, public health experts recommend the rapid release from custody of people most vulnerable to COVID-19, including Plaintiff Neko Wilson.

129.    Release or enlargement is needed to prevent irreparable harm to Plaintiff Neko Wilson and reduce the incarcerated population at the Navajo County jail to enable proper social distancing to reduce transmission for all detainees and the wider public.

130.    Release or enlargement of the most vulnerable people from custody also reduces the burden on the region's health care infrastructure by reducing the likelihood that an overwhelming number of people will become seriously ill from COVID-19 at the same time.

131.     The only way to way to remove the unacceptable risk posed to Plaintiff

Neko Wilson by COVID-19 is to remove him from the jail via release or

enlargement.

### Fourth Claim For Relief

**Unconstitutional Conditions of Confinement in Violation of the
Fourteenth Amendment
42 U.S.C. § 1983**

132.     Plaintiff repeats and re-alleges the preceding paragraphs as set forth in the

preceding paragraphs of this Complaint.

133.     Plaintiff Neko Wilson is particularly susceptible to infection, injury and

death from COVID-19.

134.     As a result of his specific characteristics, no conditions of confinement at

the Navajo County jail will adequately protect him from the risk of infection,

serious injury and death.

135.     Because the Navajo County jail is not overcapacity, the injury suffered

by Plaintiff Neko Wilson is not the result of overcrowding.

136.     Defendants are therefore holding Plaintiff Neko Wilson in custody in

violation of the Due Process Clause of the Fourteenth Amendment for people who

are pretrial or prejudgment detainees.

137.     Plaintiff seeks injunctive and declaratory relief against Defendant to

prevent the continued violation of the rights of Plaintiff.

## Fifth Claim For Relief

## Discrimination on the Basis of Disability in Violation of Title II of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12131 *et seq.*

138.     Plaintiff incorporates herein the allegations set forth in the preceding paragraphs of this complaint.

139.     Plaintiff Neko Wilson is medically vulnerable because of his disabilities, asthma and hypertension.

140.     Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

141.     Title II of the ADA requires that public entities avoid policies, practices, criteria, or methods of administration that have the effect of excluding or discriminating against persons with disabilities in the entity's programs, services, or activities. 28 C.F.R.§ 35.130(a), (b)((3), (8).

142.     A public entity must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

143.     Plaintiff is a protected person with disabilities under the ADA. *See* 42 U.S.C. § 12102. The ADA includes everyone who is medically vulnerable except

those vulnerable solely because of age or obesity. All other conditions that increase risk for COVID-19 complications or death are disabilities under federal disability rights laws. People with all of these conditions are people with physical and/or mental impairments that substantially limit one or more major life activities, including but not limited to chronic diseases and health conditions, including lung disease, heart disease, chronic liver or kidney disease (including hepatitis and dialysis patients), diabetes, epilepsy, hypertension, compromised immune systems (such as from cancer, HIV, or autoimmune disease), blood disorders (including sickle cell disease), inherited metabolic disorders, stroke, developmental disabilities, and moderate to severe asthma.

144.    Plaintiff Neko Wilson is "qualified" for the programs, services, and activities being challenged herein. 42 U.S.C. § 12131(2).

145.    Navajo County is a municipal corporation organized under the laws of the State of Arizona and is a public entity covered by Title II of the ADA. 42 U.S.C. § 12131.

146.    Defendants are violating Title II of the ADA by failing to make the reasonable modifications necessary to provide Plaintiff Neko Wilson with an equal opportunity to benefit from the jail's "services, programs, or activities," including medical care, meals, and rehabilitative programming. Failure to make these modifications places Plaintiff Neko Wilson at high risk of severe infection or death from COVID-19, and this risk is excluding him from equal access to life in jail, and from an equal opportunity to adjudicate his case as a pretrial/prejudgment

detainee. Defendants are further violating the ADA by employing methods of administration that tend to discriminate against people with disabilities including Plaintiff Neko Wilson.

147.     Defendants are required to take affirmative steps to ensure equal access for people like Plaintiff Neko Wilson with disabilities, including by making reasonable modifications. But Defendants have failed to make modifications to ensure that high-risk people with disabilities can avoid contracting—and possibly dying from—COVID-19. Exposing disabled persons to a virus that can sicken or kill them denies them the ability to benefit from Navajo County jail's programs, services, and activities.

148.     For Plaintiff Neko Wilson, the only reasonable modification in the face of the unprecedented risks of COVID-19 is removal from the jail, whether through release or enlargement.

149.     To the extent it is unreasonable to remove Plaintiff Neko Wilson from the jail, the Defendants must make modifications within the jail, including but not limited to: separate living space rather than high-capacity shared rooms and dorms with people in close proximity; testing and screening for COVID-19; free distribution of adequate cleaning supplies, including soap; frequent cleaning of common areas; free distribution of adequate personal protective equipment, including masks and gloves; education on COVID-19 risks and prevention; suspension and waiver of co-payments and charges for medical treatments and visits; and staggered access to bathrooms, meals, and other shared resources.

150.     Defendants are further violating the ADA by employing methods of
administration that tend to discriminate against people with disabilities like
Plaintiff Neko Wilson. The ADA prohibits covered entities like the Navajo County
jail from using methods of administration that defeat or impair the
accomplishment of the objectives of the public entity's program. For disabled
individuals like Plaintiff Neko Wilson who is facing criminal charges or unproven
allegations that he has violated his probation, the Navajo County jail's main
purpose and objective is to provide required safety and health services while
ensuring an individual's appearance at trial or post-trial proceedings. A person
who is sickened, unconscious, or killed by COVID-19 will be unable to make
court appearances; those who die of COVID-19 will not complete their sentences.
By setting up a system where mass infection and resulting harm and death will
disproportionately fall on people with disabilities, Defendants have failed to
establish methods of administration that do not discriminate against people with
disabilities, including Plaintiff Neko Wilson.

151.     Defendants' actions and inactions in the face of COVID-19 constitute
disability discrimination that injure Plaintiff Neko Wilson.

**Sixth Claim For Relief**

**Discrimination on the Basis of Disability in Violation of
504 of the Rehabilitation Act 29 U.S.C. § 794**

152.     Plaintiff incorporates herein the allegations set forth in the preceding
paragraphs of this complaint.

153.     Section 504 states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of [] disability, be excluded from the participation in, be denied the benefits of, or be subject[] to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

154.     Defendants Sheriff Clouse and Navajo County receive federal financial assistance for services, programs, or activities. *See* 29 U.S.C. § 794(a).

155.     Section 504 requires entities such as the Navajo County jail to make reasonable modifications to ensure that people with disabilities have equal access to its programs and services.

156.     The regulations implementing Section 504 require that entities receiving federal financial assistance avoid unnecessary policies, practices, criteria or methods of administration that have the effect of discriminating against persons with disabilities. 28 C.F.R. § 41.51(b)(3)(i).

157.     Plaintiff Neko Wilson is an individual with disabilities under Section 504.

158.     Section 504 imposes parallel requirements as the ADA. *See Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). Plaintiff Neko Wilson incorporates by reference the allegations laid out in his Fifth Claim for relief, *see supra*, paragraphs 135-148.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court:

a. Issue a temporary restraining order and/or writ of habeas corpus requiring Defendants to immediately release Plaintiff Neko Wilson who is incarcerated solely due to his being held without any reasonable release conditions;

b. Issue a temporary restraining order, preliminary and permanent injunction, and/or writ of habeas corpus imposing a process—to be determined by the Court—to consider the release or enlargement of Plaintiff Neko Wilson within two weeks, considering:

   i.   the deprivation of the petitioner's federal rights posed by the COVID- 19 outbreak (including the disability discrimination and the necessity of providing modifications including release);

   ii.  any competent evidence that Plaintiff Neko Wilson poses a serious risk of flight or danger to others;

   iii. the length of any remaining sentence to be served by Plaintiff Neko Wilson; and

   iv.  whether, by clear and convincing evidence, any present risk of flight or danger outweighs the threat to the Plaintiff/Petitioner Neko Wilson's health and safety posed by his exposure to COVID-19 in the Navajo County jail, after considering alternative conditions for release or enlargement to manage the risk(s) presented;

c. Issue injunctive relief or a temporary restraining order implementing public health and safety measures for Plaintiff Neko Wilson sufficient to abate the risk of the spread of COVID-19, including but not limited to measures to

remedy the deficiencies outlined in this complaint, on the grounds that the current conditions of confinement for Plaintiff violates the Fourteenth Amendment of the U.S. Constitution,

d. Issue injunctive relief or a temporary restraining order requiring any reasonable modifications necessary—including, but not limited to, any public health and safety measures sufficient to abate the risk of the spread of COVID-19, including but not limited to measures to remedy the deficiencies outlined in this complaint—on the grounds that the current conditions of Neko Wilson's confinement violate the ADA and Section 504;

e. Issue an order requiring Defendants to provide to Plaintiff and the Court, at intervals the Court deems proper, information regarding the ongoing spread of and testing for COVID-19 at the Navajo County jail;

f. If immediate release is not granted on the basis of this petition alone, then expedited review of the petition, including oral argument, via telephonic or videoconference if necessary;

g. Issue a judgment declaring that the conditions under which Defendants have confined Plaintiff violate the Due Process Clause of the Fourteenth Amendment with respect to the Pretrial/Prejudgment Status; the ADA and Section 504 with respect to Plaintiff Neko Wilson;

h. Grant Plaintiff his reasonable attorneys' fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; 42 U.S.C. §§ 1988, 12205; and other applicable law; and

i.  Grant all further relief as this Court deems just and proper to ensure proper

social distancing and other reasonable protection of Plaintiff.

DATED this 2nd day of July 2020.

*/s/ Lee Phillips*
Lee Phillips
Attorney for Plaintiff